UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F.,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARTIN J. O'MALLEY, et al.,[1]<br><br>                    Defendants. | Case No. 23-cv-00537-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 15, 19 |

Plaintiff J.F. seeks judicial review of the Social Security Administration Commissioner's ("Commissioner") denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g).  Before the Court are Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment.  ECF Nos. 15, 19.  The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5.  The Court will grant Plaintiff's motion and deny Defendant's motion.

## I.      BACKGROUND

J.F. filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income.  Administrative Record ("AR") 154–161.  J.F. alleges that she became disabled as of December 1, 2015.  AR 155.  The ALJ found J.F. not disabled and the Appeals Council rejected J.F.'s request for review.  AR 1.  J.F. timely requested review by filing a complaint.  AR 1993.  On cross-motions for summary judgment, Judge Nathanael Cousins found the ALJ erred by: (1) "rejecting the credibility of J.F.'s testimony without offering specific, clear, and convincing reasons for doing so," (2) "giving 'little weight' to the opinions of the treating and

---

[1] Martin J. O'Malley, Commissioner of the Social Security Administration, is automatically substituted as a party as the successor to Kilolo Kijakazi.  *See* Fed. R. Civ. P. 25(d).

examining psychologists in the record without providing specific and legitimate reasons for doing so," and (3) "failing to analyze whether J.F.'s PTSD [post-traumatic stress disorder] was a severe impairment at step two of the Social Security evaluative process."  AR 2000–14; *see also J.F. v. Saul*, No. 20-CV-04320-NC, 2021 WL 4980080 (N.D. Cal. July 26, 2021) ("Remand Order"). Judge Cousins reversed the Commissioner's decision to deny benefits and remanded for further proceedings.  AR 2014.  He ordered the ALJ on remand to "analyze J.F.'s alleged PTSD at step two of the five step evaluative process, re-evaluate the opinions of Dr. Bird and Dr. Catlin, and re-evaluate the credibility of J.F.'s symptom testimony in light of the 'clear and convincing' standard."  *Id.* (internal quotation marks in original).  Plaintiff filed a subsequent claim for benefits which was approved in 2020, so the ALJ's remand review was limited by the Appeals Council to the period between December 1, 2015, and April 30, 2020.  AR 1940–41.

The factual background of this case is summarized in the Remand Order.  AR 2000–14. The Court briefly summarizes additional facts developed on remand that are pertinent to deciding this motion.

On remand, Plaintiff once again submitted medical record evidence from her time as a Kaiser Permanente patient, AR 266–1832, and provided subjective testimony about her mental impairments (post-traumatic stress disorder ("PTSD"), depression, alcohol abuse disorder, bipolar disorder) and physical impairments (uterine fibroids, anemia, gastroesophageal reflux disease ("GERD"), chronic back pain, and asthma).  Plaintiff submitted no new medical opinion evidence and the ALJ requested none.  Accordingly, the record consists of the same, previously submitted medical opinion evidence, from the following mental health professionals: (1) treating psychiatrist Dr. Aislinn Bird, J.F.'s primary mental health provider, AR 1876–1936, 2295–98; (2) Dr. Laura Catlin, a consultative examining psychologist, AR 1852–61; (3) Dr. Jenny Forman, a state agency consultative examining psychologist, AR 1833–36; and (4) the reports of non-examining State Agency psychological consultants Dr. Yanira Olaya, M.D. and Dr. Nadine J. Genece, Psy.D.  AR 65–70, 77–84, 92–100, 106–114.  The record also includes the evaluation notes by consultative examining physician Dr. Eugene McMillan.  AR 1839–42.

On December 7, 2022, the ALJ once again found J.F. not disabled.  AR 1961.  In reaching

this decision, the ALJ used the five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. § 416.920.  The ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  AR 1943; *see* 20 C.F.R. § 416.920(a)(4)(i).  At the second step, the ALJ found that Plaintiff had three severe impairments: depression, alcohol abuse disorder, and PTSD.  AR 1944; *see* 20 C.F.R. § 416.920(a)(4)(ii).  At the third step, the ALJ found that Plaintiff did not have an impairment that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, so he proceeded to step four.  AR 1946–49; *see* 20 C.F.R. § 416.920(a)(4)(iii).  At the fourth step, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations.  20 C.F.R. § 416.920(a)(4)(iv); AR 1949.  Based on this determination, the ALJ found at step five, that Plaintiff was capable of performing her past relevant work as a hospital cleaner.  AR 1960; *see* 20 C.F.R. § 416.920(a)(4)(v).

Plaintiff timely requested review by filing a complaint.  ECF No. 1.  Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 15, 19.  Additional facts, and a discussion of the relevant medical evidence are included below as necessary to address the parties' arguments.

## II.    JURISDICTION

The Court has jurisdiction to review the final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).

## III.    LEGAL STANDARD

"The Court may set aside a denial of benefits only if not supported by substantial evidence in the record or if it is based on legal error."  *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084–85 (9th Cir. 2000).  Substantial evidence "means only . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "review[s] the administrative record in its entire[ty] to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from

United States District Court
Northern District of California

the ALJ's determination." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id.* at 1258.  The ALJ is responsible for determinations of credibility, resolution of conflicts in medical testimony, and resolution of all other ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  "'Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

## IV.     DISCUSSION

Plaintiff argues that the ALJ erred in (1) discrediting Plaintiff's subjective testimony; (2) assessing the medical opinion evidence; (3) assessing the severity of Plaintiff's conditions at step two; (4) assessing whether Plaintiff met a listing at step three; and (5) assessing Plaintiff's RFC. The Court reviews each argument in turn.

### A.      Plaintiff's Subjective Testimony

Plaintiff provided her subjective testimony regarding her mental and physical impairments. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms she alleges.  *See Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  "The clear and convincing standard is the most demanding required in Social Security cases."  *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Additionally, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed,

United States District Court
Northern District of California

4

1    and supported by the medical record." *Id.* at 1011.  "[G]eneral findings are an insufficient basis to

2    support an adverse credibility determination." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th

3    Cir. 2001).  Rather, the ALJ "must specifically identify the testimony she or he finds not to be

4    credible and must explain what evidence undermines the testimony." *Id.*  The ALJ's credibility

5    finding must be properly supported by the record and sufficiently specific to assure a reviewing

6    court that the ALJ did not arbitrarily reject Plaintiff's subjective testimony regarding pain or other

7    symptoms.  *Bunnell*, 947 F.2d at 345–46.

8         On remand, the ALJ was required to explain why he rejected the credibility of J.F.'s

9    testimony.  AR 2014.  Plaintiff argues that "the ALJ again failed to provide clear, convincing, and

10   specific reasoning for his rejection of Plaintiff's testimony."  ECF No. 15 at 9.  The Court reviews

11   J.F.'s subjective testimony of her physical and mental impairments separately, and then

12   determines whether the ALJ presented clear and convincing reasons for rejecting that testimony.

13                   **1.       Physical Impairments**

14        Plaintiff claims the following physical impairments: uterine fibroids with associated

15   anemia, asthma, GERD, and chronic back pain due to degenerative disc disease.  AR 204.

16        The ALJ found that there is medical evidence of physical impairments but found such

17   impairments "establish only a slight abnormality or a combination of slight abnormalities that

18   would have no more than a minimal effect on the claimant's ability to meet the basic demands of

19   work activity."  AR 1945.  That is, the ALJ expressly found that Plaintiff satisfied the first step of

20   the required credibility analysis.  Further, the ALJ made no "finding of malingering based on

21   affirmative evidence thereof."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

22   Consequently, at the second step of the credibility analysis, the ALJ was required to make

23   specific, clear, and convincing findings to support an adverse credibility determination concerning

24   Plaintiff's testimony regarding her physical ailments.  *Id.*

25        For each of the following physical impairments, the Court finds that the ALJ failed to

26   provide clear and convincing evidence for discounting Plaintiff's subjective testimony about her

27   physical ailments.

28

United States District Court
Northern District of California

### a.      Uterine Fibroids

Plaintiff testified that she stopped working because her fibroids caused her pain and excessive bleeding and that she received injections from her doctors each month.  AR 2306, 2312.

The ALJ concluded that her allegations of pain relating to her fibroids were "not entirely consistent with the medical evidence and other evidence in the record."  AR 1950.  In support of his conclusion, the ALJ cited to Plaintiff's admission to the consultative medical examiner, Dr. McMillan, that "her menstrual periods have stopped for the last six months, and she was not currently receiving any transfusions or iron therapy."  *Id.*

The ALJ's conclusion is not supported by the medical record.  J.F. reported to her treating physician that the fibroids caused extensive cramps and pelvic pain (rated about 7/10), and that she passed "large clots" with "profuse vaginal bleeding," all of which make it hard for her to work.  AR 1113, 1115.  Her physicians note that "cramps and abdominal pain sound consistent with uterine cramps" and their treatment plan included "pain control."  AR 1118, 1124.  Other reports note that the treatment of her "uterine fibroids required high dose NSAIDS[2] and [she] later developed abdominal pain/dyspepsia," which she tried to treat but which separately led to other negative side effects.  AR 1730.  Her physicians also note that her treatment plan for her fibroids may have worsened her bleeding.  AR 1124 ("Patient's bleeding has been chronic but may have worsened because of combined Lupron and Provera administration can cause atrophic bleeding.") These records are consistent with her testimony about pain.

The ALJ pointed to no evidence in the record, and the Court finds none, that contradicts Plaintiff's pain testimony.  Although Dr. McMillan observed that Plaintiff's "menstrual periods have stopped for the last six months," the ALJ's inference that her pain was not severe because her periods had stopped is unsupported.  *Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (finding that the ALJ erred when he relied a plaintiff's own statements instead of opinions from medical professionals in determining a claimant's functional limitations); *see Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (stating that the ALJ is "simply not qualified to interpret raw

---

[2] Non-steroidal anti-inflammatory drugs ("NSAIDs") are medications that reduce inflammation, pain and fever.  *NSAIDS*, Cleveland Clinic https://my.clevelandclinic.org/health/treatments/11086-non-steroidal-anti-inflammatory-medicines-nsaids (last accessed March 22, 2024).

United States District Court
Northern District of California

medical data in functional terms"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").  Thus, the ALJ has not demonstrated how the medical record contradicts Plaintiff's pain testimony.

### b.    Anemia Associated with Uterine Fibroids

Plaintiff also testified that she bled so much due to her fibroids that she "became anemic and [doctors] had to give [her] blood and potassium."  AR 2306.  She explained that she was taking iron pills and needed blood transfusions.  AR 2313.

The ALJ noted Plaintiff's subjective testimony about her anemia in his decision, AR 1949, but makes no effort to address J.F.'s anemia-related fatigue.  Medical record evidence demonstrates that "her chronic history of iron deficiency anemia was likely the result of 'heavy menses in setting of uterine fibroids.'"  AR 2244; *see also* AR 1842 (Dr. McMillan finding "history of anemia secondary to bleeding from her uterine fibroids").  The evidence further demonstrates that Plaintiff's anemia resulted in "persistent fatigue" to the point where her physicians thought it was "reasonable [for her] to do 50% schedule for 2 weeks."  AR 1739. Because the ALJ fails to address this physical ailment, which the medical record supports, the Court finds that he failed to provide clear and convincing evidence for discounting Plaintiff's subjective testimony.

### c.    Gastro-Esophageal Reflux Disease ("GERD")

Plaintiff first started reporting abdominal pain and decreased appetite in December 2015. AR 1031.  Her endoscopy results showed that she had gastric ulcers, inflammation of the stomach, and a hiatal hernia (a condition that predisposed her to reflux disease.)  AR 1594.  During the first administrative hearing, Plaintiff testified that she had "hernias and big ulcers," AR 34, that caused her to throw up every morning and severe abdominal pain.  AR 36.  She also explained that she had a "GI specialist [and] they [were] [sic] supposed to do surgery," but that at "Kaiser, if you don't work for them for 30 days, like if you're out, they won't . . . take your insurance."  AR 34–35.

The ALJ discounted her GERD pain testimony because the hernias and ulcers "were being

1    managed medically and were amenable to proper control by adherence to recommended medical

2    management and medication compliance." AR 1944.

3         But this is not what the medical record shows. Rather, it demonstrates that the medication

4    prescribed for J.F. was not abating her symptoms. Despite taking the medication after her

5    endoscopy, Plaintiff explained that her abdominal pain, acid reflux, and poor appetite persisted.

6    AR 1722. J.F. "tried PPI therapy with omeprazole and was advanced to protonix with discovery

7    of the gastric ulcer. She developed diarrhea and abdominal bloating. She stopped all stomach

8    acid medications . . . [but] [c]ontinues to have umbilical abdominal pain, nausea[,] and vomiting."

9    AR 1730.

10        The ALJ also explained in his decision that J.F.'s "poor appetite, [] may be contributing to

11   her GERD symptoms" but cited to no medical record evidence to support this statement. AR

12   1944–45. Similarly, the ALJ relied on J.F.'s statement that her ulcer may have been from "too

13   much ibuprofen" to discredit her testimony, but again cited to no medical record evidence that

14   supported Plaintiff's assessment of her ulcer. AR 1945; *see Tackett*, 180 F.3d at 1102–03; *see*

15   *also Rohan*, 98 F.3d at 970.

16        The ALJ also ignored the evidence in the record that J.F. was unable to obtain pain

17   medication due to lapsed insurance coverage. AR 1459 ("Her Kaiser insurance stopped because

18   she has not been at work for 30 days so she cannot come in or can she buy her stomach

19   medication. [R]eports heartburn, gas, bloated.") The Ninth Circuit has held that "[d]isability

20   benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain

21   for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

22        Thus, contrary to the ALJ's conclusion, her GERD pain was not medically controlled or

23   managed. Because the record evidence does not support the ALJ's conclusion, the Court finds

24   that he failed to provide clear and convincing evidence for discounting Plaintiff's subjective

25   testimony about her GERD-related pain.

26              **d.    Asthma**

27        Plaintiff was diagnosed with and treated for asthma. AR 1061, 1133. The ALJ discounts

28   Plaintiff's subjective testimony about her asthma because she continued smoking despite being

8

advised to quit smoking.  AR 1944.

The fact that a claimant smokes despite medical advice not to is relevant to an ALJ's credibility analysis.  *Eldred v. Comm'r of Soc. Sec. Admin.*, No. 3:10-3092-AC, 2011 WL 5999876, at *13 (D. Or. Nov. 29, 2011) (citations omitted).  However, it is possible for a claimant to be "so addicted to cigarettes that she continue[s] smoking even in the face of debilitating shortness of breath."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ's reliance on smoking to discount plaintiff's testimony to be harmless error because he had other independent reasons.).  Because J.F. has been diagnosed and treated for nicotine dependence, AR 1016, 1063, 1066, 1197, 1230, 1244, 1355, the Court finds that the ALJ's observation that J.F. continued to smoke despite her asthma is insufficient on its own to discredit her opinion.

The ALJ proffered two other reasons for discrediting J.F.'s testimony: "the treatment records documented a few exacerbations, she did not require hospitalization," and because "she was treated conservatively with medication."  AR 1944.  These reasons are not persuasive.  While an ALJ may discount a claimant's credibility based on routine and conservative treatment, *see Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), that is not what happened here.  Rather, Plaintiff sought emergency room treatment for shortness of breath and was diagnosed with pneumonia.  AR 1430.  Furthermore, while Plaintiff's asthma symptoms were generally controlled when she took medication, the ALJ ignored evidence in the record of periods where J.F. did not have her medication due to lapsed insurance coverage.  AR 1826 ("Currently without KP insurance.  Unable to purchase medications.  Found old qvar inhaler and albuterol inhaler and started using them the past few days.  No significant improvement.").  As discussed above, "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."  *Gamble*, 68 F.3d at 321.  The medical record also shows that when she did not have her inhaler, J.F. had frequent coughing and wheezing.  AR 1396, 1826–1827.

### e.   Chronic Back Pain

Plaintiff testified that she had "shooting pains in [her] legs and back," which made her lie down during the day, "tak[e] 800 [mg] of Motrin," or otherwise take a sick day.  AR 2312–14.

The ALJ discredited Plaintiff's testimony because it was not consistent with the record. AR 1945–46.  The ALJ noted that Plaintiff's medical records indicate that "there was tenderness noted in the bilateral lumbar area," AR 1946 (citing Exhibit 7F, page 59 (AR 1207)), and that "x-rays of her chest revealed on mild multilevel degenerative disc disease of the thoracic spine and only slight levocurvature."  *Id.* (citing Exhibit 10F, page 145 (AR 1806)).  But, because "her cervical spine, and lumbar spine were all within normal ranges and in her upper extremities she had good grip strength, . . . no limp in her gait, [her gait] was not painful, had a normal rate and was full bilateral weight-bearing . . . [and] her musculoskeletal showed a normal range of motion throughout as well as normal strength throughout," the ALJ found her back pain to be "non-severe."  AR 1945–46.

However, none of the ALJ's citations to the medical record contradict Plaintiff's pain testimony.  Instead, the record demonstrates that her conditions are and were capable of producing the pain she alleges, and that she was treated for such pain.  As the ALJ observed, Plaintiff was diagnosed with chronic low back pain based on "tenderness in bilateral lumbar area" and was prescribed hydrocodone.  AR 1206–07, 1373, 1382.  The record also indicates her medication was not alleviating her pain symptoms.  AR 2268, 2283 (Plaintiff explaining that her back spasms between two to three times a day, her medications (cyclobenzaprine and 10 mg of Baclofen) are no longer working, and she takes "4 Alleves due to constant pain.").

Accordingly, the ALJ has not presented clear and convincing bases for discrediting J.F.'s opinion testimony about her physical ailments.

### 2.   Mental Impairments

Plaintiff made subjective statements about her mental impairments.  She explained that her PTSD manifests itself in several ways.  First, she cannot be in crowded places with a lot of people. She explained that she "can't be in a room . . .  or . . . on an elevator when there's a whole bunch of people," because she gets paranoid.  AR 36–37.  She also feels this way on trains or on buses—

"[i]f it is cramped up, [she is] getting off." *Id.* She explained that while she would try to calm herself, her efforts were often unsuccessful. AR 2316. So instead, she explained, she would "wait[s] for the next two buses maybe, [and] if it's not a lot of people, then get on." *Id.* She testified that she does not "like people walking behind [her] down the street" because she is afraid "they'll try to get [her] or something." AR 42. She also explained that her anxiety of being on public transit has made it difficult to get to appointments and, at times, miss appointments. AR 2316.

Second, she describes her "weird dreams" and flashbacks. AR 40, 2315. She testified that she doesn't sleep through the night—"may be an hour and half here for a while but . . . [not] completely through the night." AR 40. Finally, she explained that she isolates herself from other people because she thinks a lot of people are trying to hurt her. AR 2315.

With respect to her depression, Plaintiff described that she "stays in bed and watches TV, [doesn't] go outside, [unless] if it's an emergency . . . but not just to go outside and hang out." AR 37. Relatedly, she explained that she has trouble focusing on things and feels frustrated that she "can't really even like fill out applications or anything." AR 2319. She testified that her "memory is shot," and that she often misplaces her belongings even when they are right around her. AR 41.

With respect to the medications for her mental health, J.F. explained "the medicines . . . sometimes work, but then sometimes they just don't." AR 42. She explained that her medications also gave her side effects. For example, the "anxiety medicine makes [her] drowsy." AR 2313.

The ALJ discounted J.F.'s statements about the intensity of her mental health impairments, citing four reasons: (1) Plaintiff's mental health treatment was "routine and conservative," (2) Plaintiff failed to comply with her treatment plan, (3) Plaintiff had "normal" mental status exams, and (4) she was able to do activities of daily living. *See* AR 1940–61. The Court finds that these reasons do not constitute clear and convincing evidence sufficient to discount Plaintiff's subjective testimony about her mental impairments.

### a.    "Routine and Conservative" Mental Health Treatment

The ALJ discounted Plaintiff's testimony because she did not need "intense psychotherapy or . . . inpatient or outpatient psychiatric hospitalization," and she was not prescribed psychotropic

1    medications.  AR 1951.  J.F. argues that discrediting her subjective testimony on this basis was

2    legal error.  The Court agrees.

3          An ALJ may discount a Plaintiff's symptom testimony based on a conservative course of

4    treatment.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment can

5    suggest a lower level of both pain and functional limitation, justifying adverse credibility

6    determination).  Neither the ALJ nor the Commissioner, however, points to any case law or

7    regulation that allows an ALJ to discount a Plaintiff's subjective testimony simply because her

8    treatment did not rise to "intense psychotherapy" or prescription of "psychotropic medications."

9    In fact, other courts in this circuit have routinely found that mere lack of hospitalization is not

10   equivalent to a conservative course of treatment.  *E.g., P.E. v. Saul*, 445 F. Supp. 3d 306, 334–35

11   (N.D. Cal. 2020) ("Courts in this circuit have found that psychiatric hospitalization is not a

12   benchmark for conservative treatment"); *Bagdoyan v. Colvin*, No. 12-cv-5312 RNB, 2013 WL

13   941965, at *4 (C.D. Cal. Mar. 11, 2013) ("the lack of history of psychiatric hospitalization . . . did

14   not constitute a clear and convincing reason" to discount the plaintiff's testimony).

15         Accordingly, the Court finds that the ALJ's conclusion that Plaintiff's treatment plan was

16   "routine and conservative" was not based on clear and convincing evidence sufficient to discredit

17   her testimony.

18                     **b.      Failure to Comply With Treatment Plan**

19         The Remand Order observed that "self-imposed behavioral restrictions may obviate an

20   immediate need for aggressive treatment, but they do not necessarily make her symptom

21   testimony less credible without further analysis."  AR 2012.  On remand, the ALJ reviewed and

22   discounted Plaintiff's testimony because she failed to go to her appointments, and she failed to

23   take her prescribed medications.  AR 1953–54, 1959.  J.F. argues that discrediting her subjective

24   testimony based on these reasons was legal error.  The Court agrees that the ALJ's review did not

25   constitute "further analysis" as required by the Remand Order.

26                     **i.      Failure to Attend Appointments**

27         A plaintiff may not be faulted for failing to seek treatment, particularly where the plaintiff

28   suffers from mental illness.  *Regennitter v. Comm'r of the Soc. Sec. Admin*, 166 F.3d 1294, 1299–

United States District Court
Northern District of California

1300 (9th Cir. 1999).

The ALJ noted that "Dr. Bird . . . encouraged the claimant to attend clinic groups, especially the Women's Group . . . [and] instructed the claimant to return to the clinic in one month . . . but [there is] no evidence in the record that the claimant followed up as instructed."  AR 1953.  He also found that there was a "significant gap in her treatment with Dr. Bird for her mental health conditions."  AR 1954.  He concluded, based on her alleged failure to comply with her treatment plan, that "the claimant has limitations in functioning resulting from her impairments but . . . [that] such limitations are adequately accommodated."  AR 1954–55.

The record indicates that Plaintiff's failure to attend appointments is a manifestation of her mental illness.  Dr. Bird's report confirmed that J.F.'s symptoms and limitations cause her to "have difficulty with attending appointments."  AR 1931.  Dr. Bird's assessment is also supported by J.F.'s behavior in practice.  AR 2254 ("Continuing to miss GI appts, states as fear and anxiety when going to HGH.  Does not want to go any longer."); AR 2279 ("Patient was anxious in the busy waiting room—'fe[l]t that something bad is going to happen'").  Furthermore, in 2018, Dr. Bird also noted that J.F. "is no longer engaged in psychotherapy, as she does not want to discuss past trauma.  Of note, avoidance is a common symptom of PTSD."  AR 1928.  The Court finds that J.F.'s lack of treatment under these circumstances was not a valid reason to discredit her testimony.

### ii.    Failure to Take Prescribed Medication

The ALJ also discredited Plaintiff's testimony because she did not comply with her treatment plan: "when the claimant takes her medications as prescribed her symptoms alleviate and she has an improvement in her functioning."  AR 1959.

It is well-established that "an individual may not agree to prescription medications because the side effects are less tolerable than the symptoms."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p").  A failure to follow her prescribed medication is not probative of a lack of disability when the plaintiff has shown "a good reason"—such as serious medication side effects—"for not seeking more aggressive treatment."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

There is evidence of adverse side effects in the record. Dr. Bird notes that although J.F. was on medications, "several medication trials have failed due to side effects (headache, diarrhea)." AR 1928. The ALJ made note of these side effects but gives them less weight because Plaintiff was initially able to tolerate an increase in dosage without any side effects. AR 1953. Although the ALJ is correct in noting that J.F. initially tolerated an increased dosage of sertraline, a month later J.F. reported that she had discontinued the medications due to diarrhea. AR 1889, 2279–2281. During her testimony Plaintiff also explained that when she had diarrhea, she soiled herself because she was unhoused and did not have access to bathroom facilities. AR 2319. In other words, Plaintiff did not comply with her treatment plan because the treatment was worse than the impairment. *See* SSR 16-3p; *Carmickle*, 533 F.3d at 1162. On this record, J.F.'s failure to take certain medications is not a proper basis for finding her non-credible. *Carmickle*, 533 F.3d at 1162.

In sum, neither Plaintiff's failure to appear for her appointments nor her failure to take her medications because of side effects provide clear and convincing evidence for discounting her testimony.

### c.     Normal Mental Status Exams and Self-Reported Improvements

The ALJ maintained that Plaintiff's "largely normal" mental status exams support the conclusion that Plaintiff was not as limited as she claimed. AR 1955. He also concluded that Plaintiff demonstrated improvements in her mental health—for example stating on one occasion that she was "doing pretty well," that her sleep improved, or in another instance that she was no longer experiencing auditory of visual hallucinations. AR 1952. Plaintiff argues that the ALJ mischaracterized the contents of the mental status exams by cherry picking instances of improvement. ECF No. 15 at 14–15.

The results of the mental status exams can be summarized briefly as follows:

Plaintiff's April 2017, October 2017, January 2018, March 2018, mental status exams indicated that Plaintiff's mood was between "anxious" and "depressed anxious." AR 1887–88, 1890–1892, 1895–1897. The same reports also found that she had "minimal insight" and mild "impaired ability to make reasonable decisions." *Id.* Other parts of the same reports note other

1    psychological impairments.  For example, in the January 2018 mental status exam, Dr. Bird noted

2    that J.F. was at "chronic elevated risk for SI [suicidal ideation], given . . . limited social support

3    and multiple psychosocial stressors."  AR 1890–92.  The October 2017 mental status exam

4    indicated that Plaintiff has "intrusive thoughts about childhood sexual abuse, nightmares, avoids

5    certain places and people" and is "often is unable to take public transit due to the bus or BART

6    being too crowded."  AR 1895–97.  Throughout all her mental exams, Dr. Bird found that

7    Plaintiff's "ability to function continues to be impaired given difficulties with concentration

8    keeping pace and handling stress."  AR 1911–16, 1895–97, 1890–92, 1887–88.

9          An ALJ necessarily fails to provide clear and convincing reasons for rejecting a claimant's

10    testimony when those reasons rest on mischaracterizations of the record.  *Garrison*, 759 F.3d at

11    1016; *Jones v. Kijakazi*, No. 21-16950, 2022 WL 4285597, at *1–2 (9th Cir. 2022) (holding that

12    an ALJ failed to provide clear and convincing reasons where the ALJ "mischaracterized the

13    contents of a function report . . . and a psychological evaluation").  "It is error for an ALJ to pick

14    out a few isolated instances of improvement over a period of months . . . and to treat them as a

15    basis for concluding a claimant is capable of working."  *Garrison*, 759 F.3d at 1017 (9th Cir.

16    2014).  A "'normal' designation of Plaintiff's 'mental status' is not only ambiguous but is also not

17    dispositive of Plaintiff's mental health as a whole . . . Plaintiff having a composed and 'normal'

18    demeanor during doctor visits does not preclude her from experiencing anxiety and depression in

19    other contexts."  *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal.

20    July 28, 2017) (internal citations and quotation marks omitted).

21          As in *Moody*, the ALJ seemingly relied on minor parts of these examinations in which a

22    physician recorded Plaintiff's "mental status."  *Id.*  The ALJ's selective quotation of these portions

23    mischaracterizes the medical record as a whole.  Furthermore, even if Plaintiff did present

24    "normally" on the days she was examined or treated by mental health professionals, this notation

25    alone was insufficient reason to discount her testimony.  As the Ninth Circuit has emphasized

26    while discussing mental health issues, "it is error to reject a claimant's testimony merely because

27    symptoms wax and wane in the course of treatment."  *Garrison*, 759 F.3d at 1017.  "Cycles of

28    improvement and debilitating symptoms are a common occurrence, and in such circumstances it is

1    error for an ALJ to pick out a few isolated instances of improvement over a period of months or

2    years and to treat them as a basis for concluding a claimant is capable of working." *Id.*

3                    **d.    Adverse Credibility Based Upon Activities of Daily Living**

4            An ALJ may come to an adverse credibility determination based on activities of daily

5    living when such activities contradict the claimant's other testimony or meet the threshold for

6    transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Such a determination

7    must also meet the clear and convincing standard. *Garrison,* 759 F.3d at 1016. The Ninth Circuit

8    has recognized that "disability claimants should not be penalized for attempting to lead normal

9    lives in the face of their limitations" and thus "only if her level of activity were inconsistent with a

10   claimant's claimed limitations would these activities have any bearing on her credibility." *Id.*

11   (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

12           The ALJ previously concluded that J.F. "was more active than she alleged" and that the

13   "physical and mental capabilities requisite to performing many of the tasks described [in the ALJ's

14   order] as well as the social interactions replicate those necessary for obtaining and maintain[ing]

15   employment." AR 2013. The Remand Order required the ALJ make specific findings to support

16   this conclusion by identifying "specific transferrable skills" and making findings "regarding the

17   substantiality of the activities." *Id.* On remand, the ALJ discredited Plaintiff's characterization of

18   her mental impairments on the grounds that she "was able to engage in a relationship with her

19   partner," "was able to care for her own personal hygiene . . . look for and secure housing, and

20   make and attend medical appointments," "use public transportation, which requires the ability to

21   recall and use information," and care for her father in the last year of his life. AR 1948.

22           The Court finds that these are not clear and convincing reasons for discounting a Plaintiff's

23   testimony. First, attending to her personal hygiene is not inconsistent with J.F.'s testimony that

24   she experiences PTSD and depression. The Ninth Circuit "has repeatedly asserted that the mere

25   fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her

26   credibility as to her overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

27           Second, when asked how she gets around, Plaintiff said she takes a bus or a train. AR 31.

28   While the ALJ is correct that these modes of transportation require the rider to recall and use

1    information about bus numbers and routes, the transcript of Plaintiff's testimony and the records

2    of her psychological treatment show that Plaintiff was more restricted in her activities of daily

3    living than the ALJ's decision suggests.  For example, Plaintiff explains that she is triggered when

4    there are too many people on public transit.  AR 2316.  She testified that she tries, but often fails,

5    "to control [her]self from getting all paranoid and freaked out" and that when she cannot control

6    herself, she gets off the bus and waits for an emptier one.  *Id.*  She explained that this means she

7    often misses appointments.  *Id.*

8        With respect to her relationship with her partner, this Circuit has held that the "ability to

9    maintain close relationships with [one's] family members and friends is not the same as being able

10    to work with people who are less likely to know about or understand [one's] limitations."  *Lewis v.*

11    *Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).  Furthermore, Plaintiff explained that her boyfriend helps

12    her get food, prepare meals, and with laundry because her body is "too sore" to complete such

13    tasks.  AR 38, 41.  Contrary to the ALJ's conclusions, Plaintiff's relationship with her boyfriend

14    supports rather than discredits her inability to perform routine tasks.

15        When asked about caring for her father, Plaintiff explained that "it was rough . . . he was

16    still my dad even though he did some nasty stuff to me."  AR 44.  Courts in this circuit have found

17    that caring for another is not inconsistent with the presence of severe mental health illness.  *Hoge*

18    *v. Berryhill*, No. 6:16-CV-00718-AC, 2017 WL 4881586, at *4 (D. Or. Oct. 27, 2017) (finding

19    that Plaintiffs with "social anxiety, antisocial characteristics, and difficulty being around others is

20    not so inconsistent with admitting to, at times, taking care of one's son . . . that it warrants the

21    rejection of [plaintiff's] subjective testimony.");  *Garcia v. Colvin*, No. 14-CV-05573 JRC, 2015

22    WL 65126, at *2 (W.D. Wash. Jan. 5, 2015) (finding that nothing in the record explained what

23    "taking care" required or that "it required any activities that plaintiff alleged that she could not

24    perform.  An ALJ may not speculate but must make findings based on substantial evidence in the

25    record.").  In *Blount v. Kijakazi*, the court rejected the ALJ's determination that plaintiff's

26    statements regarding his symptoms were "inconsistent" with his ability to take care of his five-

27    year old.  No. 21-CV-679-BLM, 2023 WL 4852331, at *7 (S.D. Cal. July 27, 2023).  The court

28    noted that "the ALJ did not provide any explanation or analysis; he just set forth this conclusory

1   statement . . . .  The ALJ did not identify the specific subjective symptom testimony that these

2   activities undermine nor explain how the ability to perform the activities contradict the specific

3   testimony."  *Id.*  Similarly, here, the record contains no evidence of how plaintiff took care of her

4   father, or that "it required any activities that plaintiff alleged that she could not perform."  *Id.*

5       Accordingly, "to the extent the ALJ relied on [Plaintiff's] activities of daily living as a

6   reason to discount her credibility as to the intensity, persistence, and limiting effects of [her]

7   condition, that reliance was not supported by clear and convincing reasons."  *Smith v. Berryhill*,

8   No. 18-cv-00887-VKD, 2019 WL 4848165, at *21 (N.D. Cal. Sept. 30, 2019).

9       In sum, the ALJ's reasons for discounting Plaintiff's testimony about the severity of her

10  mental impairments do not rise to the clear and convincing standard.  Accordingly, the ALJ erred

11  in discounting Plaintiff's subjective testimony.

12      **B.      Medical Opinions**

13      The ALJ reviewed the assessments of Dr. Bird and Dr. Catlin, Dr. Forman, and the State

14  Agency Consultants (Dr. Olaya and Dr. Genece).  The ALJ assigned significant weight to Dr.

15  Forman's testimony and the reports of State Agency Consultants in finding that Plaintiff does not

16  have marked or extreme limitations in her memory (i.e., understanding, remembering, or applying

17  information), interacting with others, concentrating, persisting, or maintaining pace, or adapting or

18  managing herself.  AR 1955–56.  Plaintiff argues that the ALJ erred by failing to provide specific,

19  clear, and convincing reasons for rejecting the opinion evidence offered by her treating

20  psychiatrist Dr. Bird.  ECF No. 15 at 16–20.  Plaintiff also argues that the ALJ should not have

21  given "little weight" to Dr. Catlin's opinion evidence.  *Id.* at 20.

22      For claims filed before March 27, 2017, the Ninth Circuit "distinguish[es] among the

23  opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

24  those who examine but do not treat the claimant (examining physicians); and (3) those who neither

25  examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

26  (9th Cir. 1995) (*superseded by regulation*, 20 C.F.R. pts. 404 & 416, *as recognized in Farlow v.*

27  *Kijakazi*, 53 F.4th 485 (9th Cir. 2022)).  Generally, a treating physician's opinion "must be given

28  substantial weight."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); 20 C.F.R. §

United States District Court
Northern District of California

416.927(c)(2).  "If the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record . . . .  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (internal citations and quotation marks omitted).  Since this claim was filed prior to March of 2017, the ALJ was required to give specific and legitimate reasons for dismissing treating psychiatrist Dr. Bird's opinion in favor of those of evaluators that had little to no contact with Plaintiff.

The question before this Court is whether the ALJ properly assessed and gave weight to Plaintiff's treating psychiatrist (Dr. Bird) versus the examining doctors (Drs. Catlin and Forman) versus the State Agency Consultants (Dr. Olaya and Dr. Genece).  The Court concludes that he did not.

### 1.     Dr. Bird

Between March 2017 and May 2018, Dr. Bird and one other provider under Dr. Bird's supervision, assessed Plaintiff's psychological limitations.  AR 1883–1936, 2295–98.  Her report noted that although J.F. was on medication, "several medication trials have failed due to side effects (headache, diarrhea)."  AR 1928.  Dr. Bird's report also confirmed that J.F.'s symptoms and limitations cause her to "have difficulty with attending appointments."  AR 1931.  As of May 1, 2018, Dr. Bird noted that J.F. "is no longer engaged in psychotherapy, as she does not want to discuss past trauma.  Of note, avoidance is a common symptom of PTSD."  AR 1928.  In treating Plaintiff, Dr. Bird ultimately opined that Plaintiff would experience marked limitation in understanding, remembering, and applying information, extreme limitation in interacting with others, extreme limitation in concentrating persisting or maintaining pace, and extreme limitation in adapting or managing oneself.  AR 1930–31.  She further found that J.F. would be markedly limited in her ability to: "work close to or with others without interrupting or distracting them"; sustain an ordinary routine and regular attendance at work"; and "work a full day without needing more than the allotted number or length of rest periods."  *Id.*

As the Remand Order held, "Dr. Bird was the only treating physician in the record, and her

United States District Court
Northern District of California

1  findings are supported by 60 pages of clinical notes . . . [but] the ALJ [did not] consider her

2  specialty, the consistency of her conclusions with her documented clinical findings, or whether her

3  findings were supported by the record as a whole."  AR 2008.

4      The ALJ's remand decision gave Dr. Bird's medical opinion "some weight."  AR 1958.

5  However, the ALJ limited this weight because: (1) Dr. Bird had limited interactions with Plaintiff;

6  (2) Dr. Forman's findings were less severe; (3) the State Agency Psychologists' findings were less

7  severe; and (4) Dr. Bird's "treatment records [] do not reflect the degree of impairment suggested

8  by her opinions."  AR 1958–59.

9                           a.      **Length of Relationship**

10     As the Remand Order noted, the ALJ was required to "explain why or how Dr. Bird lacks a

11 'longitudinal picture' of J.F.'s impairments considering the depth of the treatment notes spanning

12 over a year, or what sort of provider would be able to offer a longitudinal picture."  AR 2008.

13 Following remand, the ALJ once again discounted Dr. Bird's opinions because her interactions

14 with Plaintiff were limited.

15     The relevant regulations provide that in evaluating medical opinion evidence, an ALJ must

16 consider not only the length of the relationship but also the nature and extent of the treatment.  *See*

17 20 C.F.R. § 416.927(c)(2).

18     The ALJ gave Dr. Bird's opinion "some" weight, noting that "although, Dr. Bird had a

19 treating relationship with the claimant, she only examined Plaintiff [a] small number of times over

20 a relatively brief period every 1 to 3 months."  AR 1958.  He concluded that this "shows that the

21 treating relationship did not last long enough for Dr. Bird to have obtained a complete picture of

22 the claimant's medical conditions and long-term effects on her functioning."  *Id.*  The ALJ

23 explains that Dr. Bird "has had limited contact with the claimant due to multiple psychosocial

24 stressors and because she was away for three months, and the claimant declined to meet with the

25 covering psychiatrist due to feeling uncomfortable working with a male provider and repeating her

26 trauma story."  AR 1958.

27     Dr. Bird's relationship with Plaintiff is the longest of any other treating doctor in the

28 record (seeing J.F. a total of seven times over the course of a year).  AR 1883–1936, 2295–98.

1    The ALJ makes no effort to explain why a treatment relationship that lasted more than a year (at a

2    frequency of every three months) does not constitute a "longitudinal history establishing

3    treatment" or why a year's worth of observation would not allow Dr. Bird to opine as to Plaintiff's

4    mental limitations.  *Coe v. Colvin*, No. 16-cv-00238-AFM, 2016 WL 6768908, at *3 (C.D. Cal.

5    Nov. 15, 2016) (finding the ALJ erred in rejecting treating psychologist's opinion based on limited

6    treatment history when ALJ did "not explain why four visits was a basis to discredit [the treating

7    psychologist's opinion], while only one visit allowed a portion of [the examining physician's]

8    assessment to be given great weight").

9        Accordingly, the ALJ's reliance on Dr. Bird's allegedly "limited" treatment was not a

10   "specific and legitimate reason" for discounting her medical opinion.

11                    **b.       Dr. Forman's Less Severe Findings**

12       Dr. Forman examined J.F. once on February 8, 2017.  She diagnosed J.F. with "unspecified

13   depressive disorder" and offered a "rule out" diagnosis for PTSD, meaning she could not rule out

14   such a diagnosis.  AR 1835.

15       The ALJ concluded that Dr. Forman's opinion was internally consistent and consistent

16   with the medical evidence in the record.  AR 1956.  Plaintiff contends that the ALJ erred in

17   assigning only "some weight" to the opinion of her treating psychiatrist, Dr. Bird, but assigning

18   significant weight to the opinion of consultive psychological examiner, Dr. Forman.

19       Generally, "the opinions of examining non-treating physicians are afforded less weight

20   than those of treating physicians."  20 C.F.R. § 404.1527(c)(1)–(2); *Orn*, 495 F.3d at 631.  When

21   the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject

22   the treating physician's opinion without providing "specific and legitimate reasons" supported by

23   substantial evidence in the record for so doing.  *Orn*, 495 F.3d at 631 (internal quotation marks

24   and citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough

25   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

26   making findings."  *Id.*

27       First, as discussed above, Dr. Forman examined Plaintiff on only one occasion and lacked

28   the same longitudinal picture of Plaintiff's mental health conditions possessed by Dr. Bird.  On

1    that ground alone, her findings were entitled to less weight.  20 C.F.R. § 404.1527(c)(2)(i)

2    ("Generally, the longer a treating source has treated you and the more times you have been seen by

3    a treating source, the more weight we will give to the source's medical opinion.").

4            Second, Drs. Bird and Forman both diagnosed Plaintiff with depressive disorder and

5    PTSD, AR 1835, but reached different conclusions about the extent of her functional limitations.

6    Dr. Forman found that J.F.'s ability to withstand the stress of an 8-hour workday was mildly-

7    moderately impaired, her ability to interact with others was mildly impaired, and ability to adapt to

8    changes in the workplace was also mildly-moderately impaired.  AR 1835.  These findings were

9    based on one mental status examination and one clinical interview.  *Id.*  In comparison, Dr. Bird's

10   medical opinion that J.F. would be extremely or markedly limited in her daily functioning, AR

11   1930–1931, is supported by 60 pages of clinical notes and her specialized knowledge as a

12   psychiatrist.  AR 1883–1936, 2295–98; *see also* AR 2008.  Dr. Bird's opinion is also consistent

13   with Dr. Catlin's examining opinion which found similar marked impairments.  AR 1860–1861.

14   Dr. Catlin's opinion was based on a clinical interview, a mental status examination, a review of

15   Plaintiff's Kaiser mental health records, and a battery of psychological tests including WAIS-IV

16   (Wechsler Adult Intelligence Scale), RBANS (Repeatable Battery for the Assessment of

17   Neuropsychological Status), BDI Beck Depression Inventory, and Burns PTSD Inventory.  AR

18   1852.  When compared to Dr. Bird, Dr. Forman's opinion lacks the depth of knowledge of

19   Plaintiff's impairment, and when compared to Dr. Catlin, Dr. Forman's opinion lacks testing.  On

20   these grounds, her findings were entitled to less weight.  20 C.F.R. § 404.1527(c)(2)(ii)

21   ("Generally, the more knowledge a treating source has about your impairment(s) the more weight

22   we will give to the source's medical opinion.  We will look at the treatment the source has

23   provided and at the kinds and extent of examinations and testing the source has performed."); *see*

24   *also Holohan*, 246 F.3d at 1201 (finding that Courts must "consider the record as a whole,

25   weighing both evidence that supports and evidence that detracts from the Commissioner's

26   conclusion" instead of "simply [] isolating a specific quantum of supporting evidence.") (internal

27   quotation marks and citation omitted).

28           "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an

                                                        22

1   ALJ may only reject it by providing specific and legitimate reasons that are supported by

2   substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation

3   and citation omitted); *see also Reddick*, 157 F.3d at 725 ("[The] reasons for rejecting a treating

4   doctor's credible opinion on disability are comparable to those required for rejecting a treating

5   doctor's medical opinion.").   Overall, the ALJ did not present the substantial evidence required to

6   afford more weight to Dr. Forman's opinions than those of Dr. Bird.

7                              **c.      State Consultants' Less Severe Findings**

8              The ALJ found that Dr. Bird's opinion contradicted the reports from State Agency

9   consultants and that these contradictions established substantial evidence to discount Dr. Bird's

10  testimony.  AR 1955 (citing Exhibit 17F, pages 5, 8, 13, 17, 20 and 29 (AR 1887, 1890, 1895,

11  1899, 1902, and 1911); and Exhibit 18F, pages 8–10 (AR 1934–36)).  Even considering this

12  contradiction, the ALJ was not permitted to reject Dr. Bird's opinion "without providing 'specific

13  and legitimate reasons' supported by substantial evidence in the record."  *Orn*, 495 F.3d at 632.

14  Although the ALJ's order cites to several places in the administrative record, the cited evidence

15  tends to refute, rather than support, the opinions of the State Agency consultants.  For example:

16         •      On May 25, 2017, Dr. Spevak notes that Plaintiff has "stopped presenting for

17  appointments."  AR 1920.  As previously noted, a plaintiff may not be faulted for failing to seek

18  treatment, particularly where the plaintiff suffers from mental illness.  *Regennitter*, 166 F.3d at

19  1300.

20         •      On October 17, 2017, Plaintiff's mental status exam indicated that she was anxious,

21  and Dr. Bird opined that Plaintiff "continues to be in a major depressive episode (depressed mood,

22  low energy, poor concentration and motivation, low appetite, low sense of self-worth), and PTSD

23  symptoms [sic] have worsened . . . due to triggers."  AR 1897.

24         •      On January 11, 2018, Plaintiff saw Dr. Bird as an urgent walk-in.  Dr. Bird notes

25  that Plaintiff's mood was "depressed anxious" and found that Plaintiff's "depression and anxiety

26  have worsened in the context of a verbal argument with her ex-husband . . . .  [Plaintiff] has been

27  more irritable with more frequent verbal arguments with others, including strangers."  Plaintiff

28  explained that "things are getting worser and worser," and reported seeing bugs everywhere,

having auditory hallucinations, and feeling depressed and anxious despite being on medication. AR 1890–92.

- On March 5, 2018, Plaintiff made a statement that she was "doing pretty well" when in fact her mental status exam indicated that she was anxious and that she had minimal insight and ability to make reasonable decisions. She also tolerated an increased dosage of Sertraline without side effects and was prescribed Hydroxyzme for anxiety. AR 1887–88.

The Court concludes that the ALJ's citations do not constitute substantial evidence in support of his determination to reject Dr. Bird's opinion.

### 2.   Dr. Catlin

Dr. Catlin examined J.F. on April 7, 2017. AR 1852. She diagnosed J.F. with major depressive disorder and PTSD. AR 1857. Dr. Catlin opined that J.F. would have many of the same marked and extreme limitations in work-related capabilities that Dr. Bird identified. AR 1860–61; AR 1930–31. She also estimated that J.F.'s limitations would cause her to be absent from work more than four days per month. AR 1861.

The ALJ gave Dr. Catlin's opinion "little weight," stating that "Dr. Catlin's opinions were not consistent with her evaluation which does not reflect the degree of impairment suggested by her opinions." AR 1957.[3] The ALJ's order, however, mischaracterizes the tests Dr. Catlin used in reaching her conclusions.

For instance, the ALJ stated that "Dr. Catlin . . . found that the claimant was engaged in the evaluation, and she was able to sustain her attention despite stating in her opinion that that the claimant's distraction from internal stimuli would cause difficulties with her keeping up appropriate pace of the workplace." AR 1957. The ALJ's citation is to the portion of Dr. Catlin's evaluation where she describes J.F.'s participation in her interview with Dr. Catlin. With regard to more generalized testing of J.F.'s memory, however, Dr. Catlin's opinion was that J.F. is functioning in the moderately impaired range," "her performance in the Immediate Memory Index places her in the borderline range," and her performance on the "Delayed Memory Index was in

---

[3] The ALJ states that she is giving little weight to the opinions of Dr. Bird, AR 1957, but it is clear in context that she is referring to Dr. Catlin.

United States District Court
Northern District of California

the extremely low range.  AR 1856.  With regard to attention, J.F. "scored in the mildly impaired range.  When asked to repeat a string of numbers the claimant was unable to correctly repeat back more than 4 numbers at a given time.  When asked to code numbers with symbols she was able to complete 19/89 items in 120 minutes." *Id.*  Dr. Catlin derived these conclusions from the RBANS test she administered, "which is a brief neurocognitive battery which measures immediate and delayed memory, attention, language, and visuospatial skills."  AR 1855.  J.F.'s overall RBANS score "was in the extremely low range." *Id.*  Dr. Catlin's comment that J.F. was able to pay attention during her evaluation in no way undermined, Dr. Catlin's opinions regarding J.F. memory and attention impairments, which were strongly supported by these test results. Furthermore, Dr. Catlin's opinion is consistent with that of J.F.'s treating psychiatrist Dr. Bird and other medical records from the Lifelong Trust Clinic and from Kaiser Oakland Psych Records. AR 1858–61; AR 1883–1936, 2295–98.

Accordingly, the Court finds that the ALJ failed to provide substantial reasons for discounting Dr. Catlin's opinions and accordingly failed to give sufficient weight to those opinions.

### 3.      Dr. Bird and Dr. Catlin

In addition to the reasons outlined above, the ALJ also discounted Dr. Bird and Dr. Catlin's opinions based on Plaintiff's self-reported improvements and "normal" mental status exams.  That is, the ALJ found discrepancies between Plaintiff's symptoms, Plaintiff's mental status (mood, insight, judgment), and Dr. Bird's and Dr. Catlin's final impairment assessment.

An ALJ is required to view treatment and examination notes in light of the entire diagnostic record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Holohan*, 246 F.3d at 1205.  A "'normal' designation of Plaintiff's 'mental status' is not only ambiguous but is also not dispositive of Plaintiff's mental health as a whole . . . Plaintiff having a composed and 'normal' demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts." *Moody*, 2017 WL 3215353, at *10.  Also, it is "error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017

(finding that "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.") (internal citations omitted).

J.F.'s statements during her meetings with Dr. Bird such as "I am doing well," or her "polite, open, earnest" demeanor with Dr. Catlin, do not preclude her from suffering from marked impairments in more triggering contexts.  AR 1855, 1887; *Moody*, 2017 WL 3215353, at *10. Similarly, even if the snapshot of her mental status on the day of her visit to Dr. Bird indicates a mild impairment in her ability to make decisions, the evaluative part of Dr. Bird's notes indicates that Plaintiff's "ability to function continued to be impaired given difficulties with concentration, keeping pace, and handling stress."  AR 1936.  Accordingly, that Plaintiff presented "normally" on the days she was examined or treated by mental health professionals is not substantial evidence that Plaintiff is capable of working.

The opinions of two of the three examining doctors (one of whom was the only treating physician in the record) (Drs. Bird and Catlin) are consistent with each other, with J.F.'s testimony, and with the record as a whole.  The ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to give Dr. Bird's opinion "some weight" and to give Dr. Catlin's opinion "little weight."  *Magallanes*, 881 F.2d at 751.  None of the above constitute "'clear and convincing' reasons for rejecting the opinion of a treating physician."  *Lester*, 81 F.3d at 830–31.

**C.     Step Two**

"Step two is merely a threshold determination meant to screen out weak claims."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

The ALJ found that Plaintiff had three severe impairments: depression, alcohol abuse disorder, and PTSD.  AR 1944.  Plaintiff argues that the ALJ erred by failing to make a determination on whether her physical impairments (uterine fibroids, anemia, GERD, asthma, chronic back pain) constituted a severe impairment at step two.  ECF No. 15 at 11.  However, step two is merely a screening device to eliminate claims by individuals with no impairments and is "not meant to identify the impairments that should be taken into account when determining the

RFC." *Buck,* 869 F.3d at 1048.  Because step two was decided in Plaintiff's favor she "could not possibly have been prejudiced" and "[a]ny alleged error [was] therefore harmless" as the ALJ was required to "consider limitations and restrict[ions] imposed by all" of Plaintiff's impairments when determining her RFC. *Id.* 1049.

### D.    Step Three

At step three, the ALJ determines whether the claimant has an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpart P, Appendix 1." 20 C.F.R. § 416.920(a)(4)(iii).  Plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "To equal a listed impairment, [plaintiff] must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment ['closely analogous' to] the claimant's impairment." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526)).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*, 236 F.3d at 512.

"To meet any listing, Plaintiff must satisfy the requirements of paragraphs A and B for any listing or, alternatively, the requirements of paragraphs A and C" for listings 12.04 and 12.15. *Normalya T. v. Kijakazi*, No. 22-CV-02691-JST, 2023 WL 4109574, at *6–7 (N.D. Cal. June 20, 2023) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)).  Paragraph A of each listing includes medical indicia that must be present in a claimant's medical evidence.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(a).  The ALJ did not address Paragraph A in his order.  However, "the ALJ's failure to mention Paragraph A in the listing determination does not necessarily constitute legal error.  The ALJ appears to have assumed without deciding that Paragraph A was met, and moved on to Paragraphs B and C." *Needham v. Berryhill*, No. 18-CV-04183-PJH, 2019 WL 5626641, at *18 (N.D. Cal. Oct. 31, 2019).  Notably, Commissioner also does not address Paragraph A in his response to Plaintiff's motion.

United States District Court
Northern District of California

1    The record provides substantial evidence to support a finding that Plaintiff meets, at

2    minimum, listings 12.04 for depressive, bipolar, and related disorders due to her clinical

3    depression and 12.15 for trauma- and stressor-related disorders due to her PTSD.

4        Paragraph A of listing 12.04 provides:

5        Depressive disorder[s] [are] characterized by five or more of the
         following: a. Depressed mood; b. Diminished interest in almost all
6        activities; c. Appetite disturbance with change in weight; d. Sleep
         disturbance; e. Observable psychomotor agitation or retardation; f.
7        Decreased energy; g. Feelings of guilt or worthlessness; h. Difficulty
         concentrating or thinking; or i. Thoughts of death or suicide.
8
     Furthermore, Paragraph A of listing 12.15 provides that trauma- and stressor-related disorders
9
     require:
10
         Medical documentation of all of the following: 1. Exposure to actual
11       or threatened death, serious injury, or violence; 2. Subsequent
         involuntary re-experiencing of the traumatic event (for example,
12       intrusive memories, dreams, or flashbacks); 3. Avoidance of external
         reminders of the event; 4. Disturbance in mood and behavior; and 5.
13       Increases in arousal and reactivity (for example, exaggerated startle
         response, sleep disturbance).
14
     20 C.F.R. pt. 404, subpt. P, app. 1 § 12.15(a).
15
16       The ALJ begins his analysis with the Paragraph B criteria.  Paragraph B provides

17   functional criteria to evaluate how mental health conditions limit Plaintiff's functioning, including

18   whether she can "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3]

19   concentrate, persist, or maintain pace; and [4] adapt or manage oneself."  20 C.F.R. pt. 404, subpt.

20   P, app. 1 § 12.00(A)(2)(b).  To satisfy paragraph B, Plaintiff's mental health condition "must

21   result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas."  *Id.*

22       Plaintiff argues that the ALJ erred in assessing the severity of her mental health conditions

23   by discounting relevant medical opinion evidence from Dr. Bird and Dr. Catlin.  The Court agrees.

24       As described above, the ALJ improperly discounted Dr. Bird's and Dr. Catlin's testimony.

25   The improperly discounted opinion of Dr. Bird concludes that Plaintiff had:

26   •    Marked limitations in understanding, remembering and applying information;

27   •    Extreme limitations in interacting with others (including supervisors, coworkers,

28        and the public)

- Extreme limitations in concentrating, persisting, and maintaining pace (her ability to focus attention on activities and stay on task at a sustained rate independently); and

- Extreme limitations in adapting or managing herself (her ability to regulate emotions, control behavior).

AR 1930–31.

Similarly, Dr. Catlin also concludes that Plaintiff had marked limitations in:

- being able to understand and remember short and simple work-like procedures;

- her ability to carry out short and simple instructions;

- her ability to maintain adequate pace and persistence to perform simple tasks;

- maintaining her attention for a two-hour segment;

- to work in coordination with or proximity to others without being unduly distracted;

- interacting appropriately with the general public;

- adapting to changes in job routine; and

- interacting appropriately with co-workers, supervisors, and public on a regular basis.

AR 1860.

The ALJ also ignored ample evidence as to the severity of Plaintiff's mental health conditions both from her subjective testimony and from other pieces of the medical record.

During both her hearings, Plaintiff testified that she can't use public transit because it is a trigger for her PTSD—she gets off a BART car or bus if it is too crowded and waits for a less crowded train or bus.  AR 2316.  She also explained that she had difficulties sleeping due to traumatic flashbacks.  AR 2041, 2315.  With regards to her depression, she testified that she stays in bed for long periods and does not go outside unless it's an emergency.  AR 1036.  Finally, she indicated that she had problems getting along with people.  AR 2043, 2315, 2318.

Furthermore, evidence from non-psychological medical reports document instances in which Plaintiff presented with depression and PTSD that substantially impeded her ability to

United States District Court
Northern District of California

1    function.  AR 992 ("crying no reason"), 1031 ("8% weight loss 8 months"); 2254 ("Continuing to

2    miss GI appts, states as fear and anxiety when going to HGH.  Does not want to go any longer.")[4]

3         Taken as a whole, all the relevant medical and non-medical evidence supports marked

4    impairments.  Accordingly, because the ALJ failed to "use all of the relevant medical and non-

5    medical evidence in [Plaintiff's] case record to evaluate [her] mental disorder[s]," he erred at Step

6    Three.  *T.J. v. Saul*, No. 19-cv-06516-LB, 2020 WL 7664464 at *8 (N.D. Cal. Dec. 21, 2020)

7    ("[T]he ALJ misweighed the medical opinion[s].  This affects the step-three determination.  The

8    ALJ thus erred here too.").

9         Consistent with the medical opinions, subjective testimony, and related evidence cited

10   above, the record establishes that Plaintiff has at least marked limitations in her abilities to interact

11   with others and her ability to adapt or manage herself.  Because the Court finds that Plaintiff has

12   met the requirements of Paragraphs A and B, Plaintiff has demonstrated a disability.

13        **E.     RFC Determination**

14        Even if the Court were to find that there was not a listed impairment at Step Three,

15   Plaintiff nevertheless succeeds in demonstrating that the ALJ failed to properly assess her

16   limitations in his RFC evaluation.

17

18   _____

     [4] Although outside the claimed period (*i.e.*, not between 2015–2020), earlier medical record
19   evidence also supports Plaintiff's mental impairments.  She reported that she "cries often, feels
     overwhelmed easily, and is missing work sometimes because of her mood" and that she "has some
20   paranoia about what her co-workers are thinking of her and doesn't know how to talk with them
     when they ask her questions about how she is doing."  AR 272.

21   Furthermore, between December 2014 to May 2015, the following symptoms go from "more than
22   half the days" to "nearly every day."  *Compare* AR 284 to AR 291.

23        •    Feeling hopeless
          •    Feeling tired or having little energy
24        •    Poor appetite
          •    Feeling bad about yourself
25        •    Moving or speaking so slowly that other people could have noticed
          •    Feeling unproductive at work
26        •    Having trouble focusing on achieving your goals
          •    Feeling nervous, anxious, or on edge
27
     Finally, when Plaintiff "was at work . . . due to increasing crying spells, she was told to 'take a
28   break'"  AR 287.  "Due to [patient's] stress level . . . [patient] was given two days off from work."
     *Id.*

United States District Court
Northern District of California

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities . . . It [] is the most [a claimant] can still do despite [their] limitations." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("SSR 96-8p"); 20 C.F.R. § 416.945(a)(1).  "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p at *5.  The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p.  In other words, the ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC.  *Garrison*, 759 F.3d at 1011; *Laborin*, 867 F.3d at 1153.

Plaintiff argues that the ALJ failed to properly assess her subjective testimony about her mental health conditions and physical impairments in evaluating her RFC.  For the reasons discussed above, the Court agrees.

The ALJ failed to properly consider Plaintiff's subjective pain testimony about her physical and mental impairments, and improperly discounted the testimony of her treating psychiatrist.  Even if Plaintiff's physical symptoms were not "severe," they should have been considered in her RFC assessment.  *Garrison*, 759 F.3d at 1011.  When her physical ailments are taken together with her mental impairments, they establish that the intensity of her conditions limited her ability to function—that is, she will be "unable to work [due to] her chronic physical health conditions, especially chronic pain, and her ability to function continues to be impaired given difficulties with concentration, keeping pace and handling stress."  AR 1936.  She will also not be able to work around people, she will not be able to work for extended periods of time, and she will "be off task more than 30% of the time."  AR 1931.

Because the defective RFC determination serves as the basis of the findings at step four, the error was not harmless. *Smith v. Colvin*, No. 14-CV-05082-HSG, 2015 WL 9023486, at *4

(N.D. Cal. Dec. 16, 2015).  Had the discounted subjective testimony and medical opinions been incorporated into the ALJ's RFC assessment, he might not have concluded at step four that J.F. can perform past relevant work.

### F.    Remedy

Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Garrison*, 759 F.3d at 1019 (quotation marks omitted).  The Court may only remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," *id.* at 1020, which necessarily means that "there are no outstanding issues that must be resolved before a determination of disability can be made," *id.* at 1020 n.26.

This case meets the requirements for remand for an award of benefits.  The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's statements concerning the severity of her symptoms and discounting the opinion of her treating psychiatrist.  If the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Also, the record is fully developed, and this case has already been remanded once.  "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."  *Benecke*, 379 F.3d at 595 (9th Cir. 2004)

In sum, the record leaves the Court with "no basis for serious doubt that [Plaintiff] is disabled" within the meaning of the Social Security Act.  *Garrison*, 759 F.3d at 1020–21.  Accordingly, remand for an immediate calculation and payment of benefits is appropriate.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied.  The Court hereby remands this

case for an immediate calculation and payment of benefits.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  April 8, 2024



_____
JON S. TIGAR
United States District Judge